UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIZABETH DIAZ,
on behalf of E.G., an infant,

Plaintiff,

-vs- 06-CV-530-JTC

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

Plaintiff Elizabeth Diaz initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits made on behalf of her minor child, E.G. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff filed an application on November 8, 2001 for SSI benefits on behalf of E.G., alleging disability based on behavior problems and emotional disturbance (Tr. 67-71).[1] E.G. was born on January 9, 1996, and was five years old at the time the application for SSI benefits was filed. After denial of the application at the initial level (Tr. 57-61), plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 63). The hearing was held on May 2, 2003, before ALJ Benjamin F. Parks (Tr. 31-32). At the

---

[1] Page citations are to the administrative transcript filed by the Commissioner as part of the answer in this action (Item 4).

time of the hearing, E.G. was seven years old, and was in a special education class in the first grade. Plaintiff and E.G. testified at the hearing, and they were represented by attorney Ryan L. Everhart, Esq.

In a decision dated August 26, 2003, ALJ Parks found that E.G. was not disabled within the meaning of the Social Security Act (Tr. 13-18). Following the sequential evaluation process for determining disability for children, as outlined in the Social Security regulations at 20 C.F.R. § 416.924, the ALJ determined that E.G.'s behavioral disorder, while severe, did not meet, medically equal, or functionally equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 15-17).

Plaintiff filed a timely administrative appeal (Tr. 9), and subsequently submitted to the Appeals Council additional evidence consisting of E.G.'s medical and school records developed after the August 26, 2003 hearing determination. In a Notice of Decision dated June 14, 2006 (Tr. 4-8), the Appeals Council indicated that it had considered the additional evidence, but found that it did not provide a basis for changing the ALJ's determination.

Plaintiff then filed this action on August 8, 2006 seeking review of the Commissioner's decision, and the parties moved for judgment on the pleadings. In support of her motion, plaintiff contends that the Commissioner failed to properly evaluate the evidence in the record from several sources indicating that E.G. suffered from a marked impairment in two domains of functioning–attending and completing tasks, and interacting and relating with others–and failed to adequately develop the record in this regard. The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed.

## DISCUSSION

### I. Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

In addition, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000).

The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (district court may set aside Commissioner's determination that claimant is not disabled only if factual findings are not supported by substantial evidence or if decision is based on legal error).

In this case, plaintiff primarily contends that the Commissioner's determination is not supported by substantial evidence, and that review of the record as a whole shows that E.G.'s impairments are sufficiently severe to be disabling within the meaning of the Act.

## II. Standards for Determining Eligibility for Childhood SSI Benefits

The SSI program, 42 U.S.C. § 1381, *et seq*., is a federal program providing benefits to needy aged, blind, or disabled individuals who meet statutory income and resource limitations. With respect to claims filed on behalf of children, the Act provides:

> (i) An individual under the age of 18 shall be considered disabled for the purpose of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> (ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity. . . may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C).

The Social Security regulations set forth a three-step sequential analysis for the ALJ to follow when determining whether a child is disabled within the meaning of this provision. *See* 20 C.F.R. § 416.924(a)-(d). The first step is to determine whether the child is

engaging in "substantial gainful activity." 20 C.F.R. § 416.924(b). If he is not, the ALJ considers at step two whether the child has a "medically determinable impairment(s) that is severe," *i.e.*, causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, at step three, if the ALJ finds a severe impairment, he then must consider whether the child has an impairment that "meets," "medically equals," or "functionally equals" a disabling condition listed in the Listings. 20 C.F.R. § 416.924(d); *see also Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004); *White ex rel. Johnson v. Barnhart*, 409 F. Supp. 2d 205, 207 (W.D.N.Y. 2006).

In this case, ALJ Parks followed this three-step analysis, first finding that E.G. has never engaged in substantial gainful activity (Tr. 14). The ALJ then found that the medical evidence in the record was sufficient to establish that E.G.'s behavior disorder was "severe" within the meaning of 20 C.F.R. § 416.924(c), but it did not approach the severity of Listing 112.11,describing Attention Deficit Hyperactivity Disorder ("ADHD") [2] or any other listed

---

[2]Listing 112.11 sets forth the criteria for ADHD, as follows:

> Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
> A. Medically documented findings of all three of the following:
> 1. Marked inattention; and
> 2. Marked impulsiveness; and
> 3. Marked hyperactivity;
>
> AND
>
> . . . for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 112.11.

Paragraph B2 of § 112.02 contains the following criteria:

> a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such

impairment (Tr. 15). Accordingly, the ALJ proceeded to step three to determine whether E.G. had an impairment which was functionally equivalent to a listed impairment (Tr. 16-18).

In this regard, the regulations provide that when making a determination of functional equivalence in childhood disability cases, the ALJ must examine the evidence of record and consider the child's level of functioning in the following six "domains:"

i. Acquiring and using information;

ii Attending and completing tasks;

iii. Interacting and relating with others;

iv. Moving about and manipulating objects;

v. Caring for oneself; and,

vi. Health and physical well-being.

---

information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests . . . ; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

*Id.*, § 112.02.

20 C.F.R. § 416.926a(b)(1). If the child has "marked"[3] limitations in two of the domains or an "extreme"[4] limitation in one domain, then his impairments will "functionally equal" the Listings, and he will be found disabled. 20 C.F.R. § 416.926a(d); *see also White*, 409 F. Supp. 2d at 207-08.

Upon reviewing the disability-related documentation and medical evidence in the record in this case (which he found to be "extremely sparse" (Tr. 15)), ALJ Parks determined that E.G. was "markedly" impaired in the domain of acquiring and using information, but was less than markedly impaired in any of the other relevant domains of functioning (Tr. 16-17). ALJ Parks found that E.G. had no limitations in the domains of moving about and manipulating objects and health and physical well-being, and that E.G.'s limitations were "less than marked" in the domains of attending and completing tasks, interacting and relating with others, and caring for himself (Tr. 17-18). Based on this

---

[3]20 C.F.R. § 416.926a(e)(2)(i) provides:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

[4]20 C.F.R. § 416.926a(e)(3)(i) provides:

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

assessment of the record, the ALJ found that E.G.'s impairments did not functionally equal any of the Listings.

Plaintiff contends that the ALJ failed to properly consider the medical evidence, school records, and hearing testimony which provide ample support for the conclusion that E.G. suffers from a marked impairment not only in the domain of acquiring and using information, but also in the domains of attending and completing tasks, and interacting and relating to others. However, as the cases decided within the Second Circuit have made clear, "[i]t is not the district court's 'function to determine *de novo* whether [a claimant] is disabled.'" *Molina v. Barnhart*, 2005 WL 2035959, at *5 (S.D.N.Y. August 17, 2005) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)). It is the function of "the agency, and not [the district court], to weigh the conflicting evidence in the record." *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998). This court's role "is not to decide the facts anew, nor to reevaluate the facts, nor to substitute its judgment for that of the ALJ, Appeals Council, or Commissioner. Rather, the decision of the Commissioner must be affirmed if it is based upon substantial evidence, even if the evidence would also support a decision for the claimant." *McKiver v. Barnhart*, 2005 WL 2297383, at *10 (D.Conn. September 16, 2005) (citing *Dobson v. Chater*, 927 F. Supp. 1265, 1270 (D.Neb. 1996)).

Accordingly, the question for the court in this case is whether the record as a whole yields such evidence as would allow a reasonable mind to accept the ALJ's conclusions that E.G. had a less than marked limitation in either the domain of attending and completing tasks or the domain of interacting and relating with others.

**A. Attending and Completing Tasks**

The domain of attending and completing tasks considers generally how well the child is able to focus and maintain attention and begin, carry through, and finish activities, including the pace at which the activities are performed and the ease with which the child changes them. 20 C.F.R. § 416.926a(h).[5] In this regard, ALJ Parks found that the record revealed "some indication of hyperactivity contributing to poor attention and distractibility" (Tr. 16). However, the ALJ noted that although medical treatment had been sought to address E.G.'s various physical problems, no medical treatment had been sought to address his hyperactivity or attention problems, and E.G. was not taking any medication for this purpose.[6] According to the ALJ, "[t]he lack of an aggressive treatment program to

---

[5]The regulations provide the following relevant "age group descriptors" for this domain:

> (iii) Preschool children (age 3 to attainment of age 6). As a preschooler, you should be able to pay attention when you are spoken to directly, sustain attention to your play and learning activities, and concentrate on activities like putting puzzles together or completing art projects. You should also be able to focus long enough to do many more things by yourself, such as getting your clothes together and dressing yourself, feeding yourself, or putting away your toys. You should usually be able to wait your turn and to change your activity when a caregiver or teacher says it is time to do something else.
>
> (iv) School-age children (age 6 to attainment of age 12). When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2).

[6]Additional evidence submitted to the Appeals Council after the ALJ's decision indicated that E.G. began taking medication for ADHD in 2004 (*see* Tr. 185, 198, 199, 238). However, the is no indication in the record that E.G.'s condition required medication on or before the ALJ issued his decision on August 26, 2003. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (new evidence submitted to Appeals Council must relate to period on or before ALJ's decision).

resolve this child's alleged hyperactivity belies the assertions of a major behavioral barrier to attention and task completion" (*id.*). The ALJ specifically concurred with the January 30, 2002 consultative report of Dr. Paulette Harar, a State agency review physician, who found that E.G. had "less than marked" limitation in the domain of attending and completing tasks (Tr. 174).

This determination finds support in the evaluation of Dr. Michael P. Santa Maria, a licensed clinical psychologist who examined E.G. on January 10, 2002. Dr. Santa Maria found that plaintiff's motor functioning, gait, and posture were within normal limits. His speech was simple, but was fluent, clear and linear. There was no evidence of any movement disorder, anxiety disorder, or psychosis. He did not show regular behavioral problems or noteworthy attention problems. His mood appeared to be normal, and his affect was generally positive. His appetite and energy level were good. His orientation was somewhat below age expected levels. His new learning/recent memory functioning was low average to slightly below average. His remote memory functioning was fair. His insight and judgment were average to slightly below average for his age. Intelligence testing revealed a verbal scale IQ of 65, a performance scale IQ of 77, and a full scale IQ of 69 on the WISC-III (Tr. 166). Dr. Santa Maria's diagnosis was borderline intellectual functioning, with an optimistic prognosis for improvement in his overall intellectual abilities (Tr. 167).

Considering this evidence, the court cannot find that no reasonable mind could accept the conclusions reached by the ALJ with respect to E.G.'s functioning in the domain of attending and completing tasks.

### B. Interacting and Relating with Others

Plaintiff also contends that the ALJ erred in finding that E.G. had less than marked impairment in the domain of interacting and relating with others. The regulations define this domain generally as the child's ability to "initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticisms, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).[7]

In his hearing determination, ALJ Parks once again referred to the January 30, 2002 consultative report of Dr. Harar, which expressed the opinion that E.G. suffered a marked impairment in his ability to interact and relate with others (*see* Tr. 174). However, the ALJ disagreed with Dr. Harar's assessment, finding instead that E.G. was less than markedly impaired in this domain. As he did with respect to the domain of attending and completing

---

[7]The regulations provide the following relevant "age group descriptors" for this domain:

(iii) Preschool children (age 3 to attainment of age 6). At this age, you should be able to socialize with children as well as adults. You should begin to prefer playmates your own age and start to develop friendships with children who are your age. You should be able to use words instead of actions to express yourself, and also be better able to share, show affection, and offer to help. You should be able to relate to caregivers with increasing independence, choose your own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision. You should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what you say most of the time.

(iv) School-age children (age 6 to attainment of age 12). When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2).

tasks, ALJ Parks explained that this finding was based on the lack of a relevant diagnosis or treatment for the behavioral problems alleged (Tr. 16).

The ALJ provides no further explanation for his rejection of the consultative examiner's assessment, nor does he provide any explanation for his implicit rejection of other substantial evidence supporting a finding that E.G.'s ability to interact and relate with others was markedly impaired. For example, the record reflects that E.G. was referred by the Buffalo Preschool Committee on Special Education for a psychological evaluation in March 2001 due to behavioral concerns while attending the Holy Cross Head Start program (*see* Tr. 102). School Psychologist Debra Sugg reported that E.G.'s behavior deteriorated as the testing progressed. He would not stay seated, he attempted to leave the testing area, he threatened Ms. Sugg with his fist, and "generally attempted to disrupt the assessment" (Tr. 103). His responses were impulsive, and he "failed to take time to process questions before responding. He required frequent re-direction and limit setting to complete the evaluation" (*id.*).

Teacher rating scale forms completed by E.G.'s classroom teacher at Holy Cross Head Start revealed a high degree of general problematic behavior in preschool, as well as significant elevations on subtests for oppositional behavior, hyperactivity, inattentiveness, and impulsivity (Tr. 104). E.G. had a tendency to break school rules, was more prone to emotional outbursts than other children, had difficulty sitting still, and was easily distracted. Behavioral assessments revealed an overall elevated level of problem behaviors. Clinically significant scores were noted on the hyperactivity, aggression, and adaptability subscales. These results ""suggest that [E.G.] tends to act in a hostile manner that is threatening to others, that he acts without thinking, and that he tends to be overly

active and rushes through activities. [He] also lacks the ability to readily adapt to changes in the environment" (Tr. 104).

Ms. Sugg also observed that in a classroom setting E.G. "attempted but was unable to successfully initiate activities with other students. When rejected, he pouted and whined. [He] required verbal and physical prompts to follow directions. He did not demonstrate the ability to engage in tasks independently" (Tr. 105). E.G.'s teachers reported that:

> [He] is constantly moving and appears unable to keep his hands to himself. They indicated that he requires extra reminders to follow directions and that he doesn't demonstrate knowledge of boundaries/limits. [He] pushes to get to the front of the line, inappropriately attempts to take charge of activities, and acts without considering the consequences of his actions. [He] also demonstrates verbal aggression and threatens physical violence (raising his fist at classmates). His teachers noted that he is very self-directed and that he doesn't respond appropriately when he is reprimanded (walks away, continues with inappropriate behavior, yells).

(*Id.*).

Based on her evaluation, Ms. Sugg concluded that E.G.'s poor social and coping skills resulted in escalating behavior problems which interfered with his ability to learn, requiring a structured academic setting and adult supervision to meet his social and emotional needs (*id.*). She further noted that:

> [E.G.] displays inappropriate behaviors on a daily basis despite participating in a semi-structured preschool program for two years. Severe impairments are noted in his ability to interact appropriately with adults and peers. [He] demonstrates maladaptive coping skills that seriously interfere in his ability to establish appropriate relationships and interfere with the learning process for himself and others. These behaviors reflect a disruptive pattern that appears to be motivated by a combination of escape to avoid undesired tasks, underdeveloped coping skills, and an effort to gain the attention of or interaction with peers.

> Based on significant deficits in the area of social-emotional development and behavior, [E.G.] appears to meet eligibility criteria as a preschool student with a disability. These behaviors interfere with his daily functioning and are unlikely to improve without professional intervention. . . .

(Tr. 106).

Ms. Sugg evaluated E.G. again in July 2001 as he was about to enter kindergarten (*see* Tr. 162-64). She reported that E.G. continued to exhibit oppositional behavior at school despite placement in a 12:1:1 setting. He continued to demonstrate restlessness, impulsiveness, difficulty sitting still, and a tendency to break rules. Testing results were clinically significant for aggression, adaptability, and social skills, showing a tendency to act in a hostile and threatening manner along with difficulty adapting to changes in his environment and failure to develop necessary skills for successful social interaction (Tr. 163).

E.G.'s Individualized Educational Program for kindergarten in school year 2001-2002 indicated a disability classification of "Emotionally Disturbed" (Tr. 125). In the area of social development, he was reported to have difficulties interacting appropriately with peers and adults, following rules, and sitting still. He demonstrated aggressive tendencies, he was defiant, and was easily distracted (Tr. 126). His behavior "seriously interferes with instruction and requires additional adult support" (*id.*), including curb to curb transportation, 15:1 special education classroom, verbal and physical cues, preface class change with 5 minute warning, timer, structured environment, consistent routine, clear expectations, positive reinforcement, and preferential seating (Tr. 125-28).

In addition, following the hearing, ALJ Parks referred E.G. for a further consultative "Intellectual Evaluation," which was performed by Thomas Dickinson, Ph.D., on June 12,

2003 (Tr. 181A-F). Dr. Dickinson reported that E.G. had some friends in school, but had been suspended three times in the past month for various infractions including throwing chairs, throwing papers, and arguing with teachers (Tr. 181A). Plaintiff related that E.G. had attended school counseling for behavioral problems, but this stopped because he would not communicate with the counselor. Plaintiff reported that the school had referred E.G. to Child and Adolescent Treatment Services for further counseling (*id.*). Plaintiff also reported numerous problems with E.G.'s behavior such as frustration, moodiness, temper troubles like throwing and breaking things, impulsivity, losing friends, poor concentration and memory, poor organization, learning troubles, short attention span, hyperactivity, destruction of peer's property, and being "mean with other children" (Tr. 181B).

Dr. Dickinson observed mixed cooperation and uncooperativeness, restless motor behavior, easy distraction, self-directed behavior, poor attention and concentration, poor recent and remote memory, poor insight and judgment, and many refusals to comply with testing instructions (Tr. 181C). Based on his observations and testing results, Dr. Dickinson found that E.G. did not have age-appropriate abilities to attend and follow directions, to complete tasks, or to interact with peers and adults. Social behavior and learning skills were also below age-appropriate level (Tr. 181E). Dr. Dickinson's diagnosis was adjustment disorder with mixed disturbance of emotions and conduct, impulse control disorder, learning disorder, reading disorder, possible ADHD, and disruptive behavior disorder (*id.*). He found E.G. to be functioning at "[d]ull normal intellectual level" (*id.*). He recommended medical follow-up with supportive counseling and psychiatric evaluation, continued special school services, and periodic testing to chart intellectual and educational functioning (Tr. 181F). Prognosis was rated as "fair," with medical and psychiatric

supervision, continued counseling, and special school services. Dr. Dickinson remarked that his evaluation results were consistent with available records and with the mother's complaints (Tr. 181F).

While an ALJ is not required to "reconcile every conflicting shred" of medical evidence or testimony, *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981), *quoted in Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000), "the ALJ must acknowledge relevant evidence or explain his implicit rejection of it . . . ," *Castillo v. Apfel*, 1999 WL 147748, at *8 (S.D.N.Y. March 18, 1999), and also "must adequately explain his analysis and reasoning in making the findings on which his ultimate decision rests and must address all pertinent evidence." *Lugo v. Barnhart*, 2008 WL 515927, at *17 (S.D.N.Y. February 8, 2008) (citing cases). Here, ALJ Parks acknowledged the substance of Ms. Sugg's and Dr. Dickinson's reports (*see* Tr. 15-16), as well as the consultative physician's findings, but he did not explain why he rejected this significant evidence in favor of a determination which was based entirely on the absence of any showing that E.G. had received medical attention to address his condition. This resulted in an improper evaluation of pertinent school and medical records which, in the court's view, provide further evidentiary support for Dr. Harar's finding that E.G. suffered a marked impairment in his ability to interact and relate with others.

Based on this analysis of the record as a whole, the court cannot find that it yields such evidence as would allow a reasonable mind to accept the ALJ's conclusion that E.G. had a less than marked limitation in the domain of interacting and relating with others. Accordingly, the ALJ's determination is not supported by substantial evidence, and must be reversed.

Plaintiff seeks reversal and remand solely for the calculation of benefits, given the persuasive proof of E.G.'s marked impairment in at least two domains of functioning, as well as the length of time the application has been pending (over six years). Under the Second Circuit's rulings, a remand solely for calculation of benefits may be appropriate when the court finds that there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision . . . ." *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999)); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the . . . substantial evidence standard."); *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

As the discussion above amply demonstrates, the evidence contained in E.G.'s school records and the reports of examining and reviewing medical consultants provides persuasive proof of his marked limitation of functioning in the domain of interacting and relating with others. When considered in conjunction with the ALJ's finding with respect to the domain of acquiring and using information, this evidence compels but one conclusion–that E.G. meets the criteria for functional equivalence under 20 C.F.R. § 416.926a, and is therefore disabled within the meaning of the Social Security Act. Additionally, the court is reluctant to contribute any further to the delay of the determination of plaintiff's application by remanding for further administrative proceedings. As the courts have noted, delay "is harmful for any litigant, but particularly in connection with benefits for children which are not to replace lost income, but to enable low-income families to afford

special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." *Nieves ex rel. Nieves v. Barnhart*, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing *Maldonado v. Apfel*, 55 F. Supp. 2d 296, 297-98 (S.D.N.Y. 1999)). Indeed, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." *Molina v. Barnhart*, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002). E.G. was five years old at the time the application for SSI benefits was filed on his behalf, and he is now twelve.

For these reasons, the court finds that remand to the Commissioner for further proceedings would serve no useful purpose. Accordingly, remand is ordered solely for the calculation of benefits.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Item 10) is granted, the Commissioner's motion for judgment on the pleadings (Item 11) is denied. The Commissioner's denial of plaintiff's application for SSI benefits on behalf of her minor child, E.G., is reversed, and the case is remanded to the Commissioner solely for the calculation of benefits.

The Clerk of the Court is directed to enter judgment in favor of the plaintiff.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March 21 , 2008
p:\opinions\06-530.mar12.08